# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

GORDON SABOL,

                Plaintiff,

      v.

ABBOTT LABORATORIES, *a/k/a* ST.
JUDE MEDICAL TRIFECTA, and ABBOTT
LABORATORIES, INC.,

                Defendants.

Civil Action No. 25-02271 (JXN)(JSA)

**OPINION**

**NEALS**, District Judge

Before the Court is Defendants Abbott Laboratories and Abbott Laboratories, Inc.'s ("Abbott" or "Defendants")[1] motion to dismiss Plaintiff Gordon Sabol's ("Plaintiff" or "Sabol") Complaint pursuant to Federal Rules of Civil Procedure[2] 8 and 12(b)(6). (ECF No. 20.) Plaintiff opposed the motion (ECF No. 21), and Abbott filed a reply in further support (ECF No. 22). Abbott also filed a notice of supplemental authority. (ECF No. 24.) The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1441(a). The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons set forth below, Abbott's motion to dismiss is **GRANTED**.

---

[1] Defendants note that while the Complaint purports to name as Defendants: "Abbott Laboratories, a/k/a St. Jude Medical Trifecta" and Abbott Laboratories Inc., Abbott Laboratories does not do business as and is not otherwise known as Abbott Laboratories, a/k/a "St. Jude Medical Trifecta, Inc" and no entity named "St. Jude Medical Trifecta, Inc." is affiliated with either Defendant. (Mot. to Dismiss at 1, ECF No. 20.)

[2] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

I.  **BACKGROUND**[3]

A. **Factual Background**

This product liability action arises from the alleged personal injuries Plaintiff sustained from a Trifecta Valve TFGT 25A with Glide Technology ("Trifecta GT") heart replacement valve designed, manufactured, and distributed by Abbott. (*See generally* Compl., ECF No. 1-1.) The Trifecta GT valve is a heart valve replacement device intended to treat a diseased, damaged, or malfunctioning native or prosthetic aortic heart valve. (Compl. ¶ 8.)

*i.  Regulatory Approval of the Trifecta GT*

The Trifecta GT is a Class III medical device approved by the Food and Drug Administration ("FDA") through the FDA's Premarket Approval ("PMA") Process in 2016. (*See* Compl. ¶ 8; Req. for Judicial Notice ("RJN"), ECF No. 20-2; Defs.' Ex. 1 ("Trifecta Valve PMA Letter"), ECF No. 20-4; Defs.' Ex. 2 ("Trifecta GT PMA Letter"), ECF No. 20-5.)[4]

On February 27, 2023, the FDA issued a warning informing health care providers of the potential risk of early structural valve deterioration ("SVD") with Abbott Trifecta valves, including the Trifecta GT valve in Plaintiff's body. (Compl. ¶ 10.) On July 31, 2023, Abbott announced it would stop selling Trifecta devices, including the Trifecta Valve and Trifecta GT, in the United

---

[3] The following factual allegations are taken from the Complaint, which, for purposes of a motion to dismiss, are accepted as true. *Sheridan v. NGKMetals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010).

[4] Abbott requests the Court to take judicial notice of the FDA records detailing the PMA process through FDA approval. (*See generally* RJN.) The facts regarding the FDA's approval of Trifecta GT are public record and thus suitable for judicial notice under Federal Rule of Evidence 201. *See Clements v. Sanofi-Aventis, U.S., Inc.*, 111 F. Supp. 3d 586, 592 n.2 (D.N.J. 2015) (taking judicial notice of facts relating to FDA approval process of medical devices); *Desai v. Sorin CRM USA, Inc.*, No. 12-2995, 2013 WL 163298, at *4 (D.N.J. Jan. 15, 2013) (taking "judicial notice of the FDA's website, and hold[ing] that it establishes premarket approval of the Biotronik lead" medical device; *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 705 n.5 (3d Cir.2004) (taking judicial notice of PTO notice of allowance of trademark for drug); *Novartis Pharms. Corp. v. Wockhardt*, No. 12-3967, 2013 WL 5770539, at *4 (D.N.J. Oct. 23, 2013) (taking judicial notice of Novartis's citizen petition to block approval of generic drug and of the FDA's response)). Importantly, Plaintiff does not contest the validity of any of Abbott's FDA records or the Court's discretion to consider them. (*See* Pl.'s Opp'n at 5, ECF No. 21.) Accordingly, the Court takes judicial notice of the FDA records attached as Exhibits 1 through 4 to the Declaration of Jaclyn M. Setili Wood. (*See* Setili Wood Decl., ECF No. 20-3.)

States. (*Id*. ¶ 15; Defs.' Ex. 3 ("Market Withdrawal Letter"), ECF No. 20-6.) Abbott's July 31, 2023 letter was likewise announced by the FDA. (*See* Defs.' Ex. 4 ("FDA Announcement"), ECF No. 20-7.)

### ii. Plaintiff's Trifecta GT Heart Valve Replacement

On October 3, 2016, Plaintiff's aortic heart valve was replaced with a Trifecta GT. (Compl. ¶ 9.) On March 19, 2023, Plaintiff was rushed to the hospital with symptoms of cardiac arrest. (*Id*. ¶ 11.) Upon examination, Plaintiff's implanted Trifecta GT valve showed signs of deterioration. (*Id*.) Further testing on April 26, 2023, confirmed "restricted mobility of the right and noncoronary cusp leaflets" due to "severe calcification." (*Id*. ¶ 13.) On May 17, 2023, Plaintiff underwent valve replacement surgery. (*Id*. ¶ 14.)

### B. Procedural History

On February 28, 2025, Plaintiff commenced this lawsuit against Abbott in New Jersey Superior Court, asserting common law claims for Negligence (Count I), Strict Liability (Count II), and Strict Products Liability: Failure to Warn (Count III). (*Id*. ¶¶ 16–36.) On April 3, 2025, Defendants removed the case to this Court. (Notice of Removal at 2–3, ECF No. 1.)

On June 27, 2025, Abbott filed the instant motion to dismiss pursuant to Rules 8 and 12(b)(6). (Mot. to Dismiss.) Plaintiff opposed the motion (Pl.'s Opp'n), and Abbott replied in further support (Defs.' Reply, ECF No. 22). On December 11, 2025, Abbott filed a notice of supplemental authority in support of their motion. (Notice of Supp. Auth., ECF No. 24.) This matter is now ripe for the Court's consideration.

## II. <u>LEGAL STANDARD</u>

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and

the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting

*Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under

Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must

identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675

(2009). Second, the court must identify all the plaintiff's well-pleaded factual allegations, accept

them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v.

UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can disregard

bare legal conclusions or factually unsupported accusations that merely state the defendant

unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are

sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211

(quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id*. at 210 (quoting *Iqbal*, 556

U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim

has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr

Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.    **DISCUSSION**

The Complaint asserts claims for Negligence (Count I), Strict Liability (Count II), and

Strict Products Liability: Failure to Warn (Count III) against Abbott. (Compl. ¶¶ 16–36.) Abbott

argues that Plaintiff's common law claims should be dismissed because they are preempted by

federal law, subsumed by the New Jersey Products Liability Act ("NJPLA"), and otherwise fail to

state a claim for any of the three product defect theories recognized under the NJPLA. (*See*

4

*generally* Mot. to Dismiss at 8–19.) The Court finds that the NJPLA subsumes Plaintiff's common-law claims and should therefore be dismissed. The Court addresses its findings below.

### A.  Subsumption of Plaintiff's State-Law Claims Under the NJPLA

The NJPLA provides:

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.

N.J.S.A. § 2A:58C-2.

The NJPLA defines a "product liability action" as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." *Id.* § 2A:58C-1(b)(3).

The NJPLA defines "harm" as including "(a) physical damage to property, other than to the product itself"; (b) "personal physical illness, injury or death"; "(c) pain and suffering, mental anguish or emotional harm"; and "(d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c)." *Id.* § 2A:58C-1(b)(2).

"In implementing the NJPLA, the Legislature intended 'to limit the expansion of products-liability law' and 'to limit the liability of manufacturers so as to balance[ ] the interests of the public and the individual with a view towards economic reality.'" *Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 817 (D.N.J. 2019) (alteration in original) (quoting *Zaza v. Marquess & Nell, Inc.*, 144 N.J. 34, 48–49 (1996)). "The New Jersey Supreme Court has explained that '[t]he language chosen by the Legislature in enacting the [NJ]PLA is both expansive and inclusive, encompassing virtually all possible causes of action relating to harms caused by consumer and

other products.'" *Id.* (first alteration in original) (quoting *In re Lead Paint Litig.*, 191 N.J. 405, 436–37 (2007)). The NJPLA's language represents "a clear legislative intent that . . . the [NJ]PLA is paramount when the underlying claim is one for harm caused by a product." *Sinclair v. Merck & Co.*, 195 N.J. 51, 66 (2008). "As explained by the Third Circuit, the NJPLA 'effectively creates an exclusive statutory cause of action for claims falling within its purview.'" *Greisberg v. Bos. Sci. Corp.*, No. 19-12646, 2020 WL 278648, at *4 (D.N.J. Jan. 17, 2020) (quoting *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991)).

Recognizing the NJPLA's broad scope, "New Jersey federal and state courts have consistently dismissed product liability-related claims based on common law theories when at the heart of those theories is the potential 'harm caused by a product.'" *Hindermyer*, 419 F. Supp. 3d at 818 (collecting cases). "In addition, courts have found that the NJPLA subsumes common law . . . claims so long as the harm alleged was caused by a product." *Id.* at 819 (collecting cases). However, "[a]lthough the NJPLA generally subsumes common law negligence claims alleging that a plaintiff suffered harm as a result of a defective product itself, the NJPLA does not subsume negligence claims where the alleged harm stems from the independent conduct of a defendant." *Guardavacarro v. Home Depot*, No. 16-8796, 2017 WL 3393812, at *7 (D.N.J. Aug. 8, 2017). *See also Universal Underwriters Ins. Grp. v. Pub. Serv. Elec. & Gas Co.*, 103 F. Supp. 2d 744, 748 (D.N.J. 2000) (finding negligence claim did not fall under the NJPLA where claim was "not related to a defect in the product (*i.e.* the electricity), but rather to the maintenance and oversight of PSE&G's emergency response service."); *Thomas v. Ford Motor Co.*, 70 F. Supp. 2d 521, 530 (D.N.J. 1999) (holding that the NJPLA did not subsume a claim for negligent installation, because it was grounded in the defendant's conduct, rather than harm caused by a defective product).

"To determine whether the NJPLA subsumes a particular claim, the court must ascertain the type of harm that a plaintiff is alleging; namely, whether the harm involves property damage or bodily injury caused by the culprit product, or whether the harm was solely to the defective product itself." *Guardavacarro*, 2017 WL 3393812 at *4. Put another way, "courts do not simply determine whether or not the victim's injury was literally 'caused by a product,'" but rather, "courts tend to look at the essence of the claims and decide whether or not the plaintiff is disguising what would traditionally be considered a products liability claim as an alternative cause of action." *New Hope Pipe Liners, LLC v. Composites One, LLC*, No. 09-3222, 2009 WL 4282644, at *2 (D.N.J. Nov. 30, 2009). "However, when the essential nature of the claim is not that of a [NJ]PLA claim, the plaintiff may maintain a separate cause of action." *Guardavacarro*, 2017 WL 3393812, at *4 (internal quotation marks omitted) (quoting *Volin v. Gen. Elec. Co.*, 189 F. Supp. 3d 411, 418 (D.N.J. 2016)).

The Court agrees with Abbott and finds that the NJPLA subsumes all three counts, which are **dismissed** *without prejudice*. *See*, *e.g.*, *Calender v. NVR Inc.*, 548 F. App'x. 761, 764 (3d Cir. 2013) ("The [NJ]PLA does not recognize negligence or implied breach of warranty as separate claims for harm caused by a product. Rather, the [NJ]PLA is the exclusive remedy for such actions and other claims are subsumed within the statutory cause of action."); *Mendez v. Shah*, 28 F. Supp. 3d 282, 294 (D.N.J. 2014) (dismissing implied warranty claim as subsumed by NJPLA); *Fidelity & Guar. Ins. Underwriters, Inc. v. Omega Flex, Inc.*, 936 F. Supp. 2d 441, 447 (D.N.J. 2013) ("To the extent [that the plaintiff] asserts a claim for breach of implied warranty, . . . [that] claim is subsumed by the [NJ]PLA and must be dismissed."); *Hindermyer*, 419 F. Supp. at 819 (holding "based on the allegations, . . . plaintiff has clearly asserted a 'harm' which falls within the broad reach of the NJPLA, and her negligence, implied warranty, and fraud-based claims are subsumed

7

by that statute."); *Nelson v. Biogen IDEC Inc.*, No. 12-7317, 2017 WL 1382910, at *2 (D.N.J. April 17, 2017) ("[U]nder the NJPLA there are only three available causes of action: manufacturing defect, failure to warn, and design defect."); *Hart v. Medtronic, Inc.*, No. 16-5403, 2017 WL 5951698, at *3 (D.N.J. Nov. 30, 2017) (dismissing plaintiff's common law product liability claims because "New Jersey law no longer recognizes negligence, failure to test/warn, and breach of implied warranty as viable separate claims for harm derived from a defective product."); *Clements*, 111 F. Supp. 3d 586, 596–97, 597 n.5 (D.N.J. 2015) (collecting cases where courts dismiss common-law claims of strict liability, negligence, and breach of implied warranty as subsumed by the PLA); *Port Auth. of N.Y. & N.J. v. Arcadian Corp.*, 189 F.3d 305, 313 (3d Cir. 1999) (finding that negligence "for harm caused by a defective product" is subsumed by the NJPLA); *Gomez v. H&M Int'l Transp., Inc.*, No. 17-231, 2017 WL 3951598, at *5 (D.N.J. September 7, 2017) ("The Court agrees that [p]laintiff's negligence claim, insofar as it is based upon a "failure to warn," is subsumed by [p]laintiff's failure to warn claim under the NJPLA.").[5]

"In New Jersey, the [NJPLA] 'establishe[s] the sole method to prosecute a product liability action' for any action alleging 'harm caused by a product, irrespective of the theory underlying the claim.'" *LaTouche v. Merck & Co.*, No. 22-1619, 2023 WL 3604655, at *2 (D.N.J. May 23, 2023) (citing *Clements v. Sanofi-Aventis, U.S., Inc.*, 111 F. Supp. 3d 586, 596 (D.N.J. 2015)).

Plaintiff's common law claims for negligence, strict liability, and failure to warn are subsumed by the NJPLA, which provides the exclusive remedy for harm caused by a product. *See*

---

[5] The Court notes the Supplemental Authority submitted by Abbott is a non-binding decision in which the United States District Court for the District of Nevada dismissed a products liability lawsuit against Abbott. (*See* Notice of Supp. Auth.) In *Purohit v. Abbott Laboratories Inc.*, the court concluded that, "[t]o avoid having his state-law products-liability claim preempted, [Plaintiff] must plausibly allege that his Trifecta Valve deviated from a particular FDA requirement.", and that "a recall or withdrawal from the market doesn't alone show noncompliance with a particular FDA requirement." No. 25-1026, 2025 WL 3527245, at *3–4 (D. Nev. Dec. 8, 2025). Because the Court concludes that the NJPLA subsumes Plaintiff's common law claims, thus requiring dismissal, it need not reach the question of whether Plaintiff's claims, once properly pled under the NJPLA, would be preempted by federal law.

*In re Lead Paint Litig.*, 191 N.J. at 436 (finding that the NJPLA accomplishes its liability-limiting function by creating "one unified, statutorily defined theory of recovery for harm caused by a product."). Accordingly, these claims are **dismissed** as independently pled causes of action. Because this determination disposes of all Plaintiff's claims, the Court declines to address at this time whether the claims are preempted under 21 U.S.C. § 360k. To the extent Plaintiff intends to proceed under the NJPLA, any such claim must independently satisfy applicable pleading standards and, if appropriate, may be subject to preemption analysis.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Defendant's motion to dismiss (ECF No. 20) is **GRANTED**. Plaintiff's Complaint (ECF No. 1-1) is **DISMISSED** *without prejudice*. To the extent Plaintiff can cure the deficiencies in his Complaint, this Court will allow Plaintiff to amend his complaint within thirty (30) days of this Opinion and the corresponding Order. An appropriate Order accompanies this Opinion.

**DATED:**      **3/26/2026**

_____
JULIEN XAVIER NEALS
United States District Judge